SIREINO JOE MARTINEZ, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 11503

March 19, 1981                              625 P.2d 87

*Norman Y. Herring,* State Public Defender, and *J. Gregory Damm,* Deputy Public Defender, Carson City, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *William MacDonald,* District Attorney, and *Jack T. Bullock,* Deputy District Attorney, Humboldt County, for Respondent.

# OPINION

*Per Curiam:*

Appellant was found guilty of second degree murder in the death of Carl C. Coberly. On appeal, the sole issue is whether sufficient evidence was adduced to sustain appellant's conviction.

Between 2:00 a.m. and 3:00 a.m. on June 24, 1978, the appellant was drinking at the bar in the Winner's Inn in Winnemucca. Around 3:00 a.m. a verbal dispute over ethnic purity broke out between the appellant and two other individuals, Juan Martinez and Michael Blagovich. The dispute escalated into a shoving match, then into a fight in the street, and finally appellant fired several shots from a .38 revolver at Juan Martinez, Michael Blagovich and Charles Watson.

The appellant fired his last shot at Juan Martinez while both of them were in an alley adjacent to the La Villa Motel. Apparently the victim of the homicide, the 64 year old Coberly, was out walking his dog at around 3:15 a.m. in the alley. When appellant and Juan Martinez came running into the alley, Coberly reportedly attempted to take cover by a large garbage dumpster. However, the fifth round fired by appellant, which missed Juan Martinez, impacted with the blacktop of the alley. Apparently, a large fragment of the bullet split off and struck Coberly over the left eye, piercing his skull, immobilizing him, and causing his death a few hours later.

"On appeal, the issue is not whether this court would have found appellant guilty, but whether the jury properly could." Anstedt v. State, 89 Nev. 163, 165, 509 P.2d 968 (1973); Wheeler v. State, 91 Nev. 119, 120, 531 P.2d 1358 (1975); Hulett v. State, 92 Nev. 140, 141, 546 P.2d 1293 (1976); Crawford v. State, 92 Nev. 456, 457, 552 P.2d 1378 (1976). And, in this regard, this court has declared that, "[w]here there is substantial evidence to support a verdict in a criminal case, . . . , the reviewing court will not disturb the verdict nor set aside the judgment." Sanders v. State, 90 Nev. 433, 434, 529 P.2d 206 (1974); *Crawford,* cited above; *Hulett,* cited above.

Of course, as an element of the crime, the State was required to prove an act of the appellant caused Carl Coberly's death. No physical evidence conclusively linked the appellant's gun to the bullet fragment taken from Coberly's brain. However, a great deal of circumstantial evidence was presented to show that it was the appellant's act, *i.e.,* the firing of the fifth round,

which caused Coberly's death.[1] Therefore, we find the evidence presented on this element of the crime substantial enough to establish guilt beyond a reasonable doubt, as determined by a rational trier of fact. Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980).

Affirmed.

---

[1]Testimony was proffered to establish that: (1) the victim was up at 3:00 a.m. to nurse his dog, (2) an individual looking like the victim started to walk a dog in the alley just before the shooting, (3) the same dog was seen wandering aimlessly near the La Villa Motel at 6:00 a.m., (4) an individual looking like the victim was standing right next to the dumpster—close by the gas meter (the place where the victim was found at 5:40 a.m. on June 24, 1978)—in the midst of the shooting and just before the last shot was fired, (5) the victim had been shot from more than 4 feet away because no powder burns were found, (6) the fatal bullet was a fragment most likely caused by a ricochet off the asphalt of the alley, (7) the alley sloped downhill so that where the appellant allegedly fired the last shot was significantly lower than the place where the victim was standing when he was hit, *and,* with the appellant in a kneeling position, firing at a rolling Juan Martinez, it is very likely that the fifth bullet would have hit the asphalt, and, (8) the victim could very possibly have lived with strong vital signs for a number of hours after suffering the injury he did, but he would have been unconscious and mute. Also, no witness who testified concerning the shots around 3:00 a.m. on the night in question could recall having heard any other kind of a gun report or loud noise after the five shots in question.